IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DOUGLAS FIELDS, § | | |
| Plaintiff, § | | |
| § | | |
| V. § | | A-11-CV-1022-AWA |
| § | | |
| SBC COMMUNICATIONS, INC. § | | |
| DISABILITY INCOME PLAN, § | | |
| Defendant. § | | |

### ORDER

Before the Court is Defendant's Motion to Enforce Settlement Agreement, filed on March 7, 2014. (Dkt. # 29).  Although Plaintiff did not file a response to the Motion, he did file a Status Report with the Court on April 9, 2014 (Dkt. # 37).

**I.   General Background**

Plaintiff Douglas Fields ("Plaintiff") is a former employee of AT&T Inc. f/k/a SBC Communications, Inc. ("Defendant"). As part of his employment contract, Plaintiff was eligible for benefits under the Defendant's Disability Income Plan ("DIP"). Plaintiff alleges that on September 7, 2004, he became "totally disabled" under the meaning specified in the DIP. Thereafter, Plaintiff applied for both short-term and long-term disability benefits under the DIP. His short-term benefits were paid through September 2005, and his long-term benefits were paid through October 2006. Plaintiff claims that Defendant arbitrarily terminated his benefits on November 29, 2006. After timely filing and exhausting his administrative remedies, Plaintiff states that his final denial for benefits was dated November 16, 2007. Plaintiff subsequently qualified for Social Security Disability benefits. According to Plaintiff, Defendant informed him that he had been overpaid benefits and requested that he return some of the money paid to him under the DIP.

On November 29, 2011, Plaintiff filed the above-styled lawsuit against Defendant under §502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132, and the Declaratory Judgment Act, 29 U.S.C. § 2201. Plaintiff seeks to recover long term disability benefits and to clarify and enforce his rights under the DIP. Plaintiff also alleges that Defendant breached its fiduciary duties under ERISA by failing to provide an independent review of the claims decisions made with respect to his benefits and by discontinuing his benefits under the DIP.

On April 30, 2013, the District Court reassigned this case to the undersigned after the parties consented, pursuant to 28 U.S.C. § 636(c) Rule 73. *See* Dkt. No. 20. On November 18, 2013, the Parties filed an agreed motion for extension of deadlines because they were in the middle of negotiating a settlement of the case, which the Court granted. *See* Dkt. Nos. 24, 25. On January 9, 2014, the Parties filed a Notice of Anticipated Settlement and Agreement to Stay Pending Deadlines. Dkt. No. 26. On February 14, 2014, the Parties filed a Joint Status Report with the Court stating again that "the Parties have reached a tentative agreement to resolve all claims and causes of action between them, subject to the execution of mutually agreeable settlement documents." Dkt. No. 28.[1]

On March 7, 2014, Defendant filed a Motion to Enforce Settlement Agreement (Dkt. No. 29) requesting the Court to enter an order enforcing the settlement agreement. At the hearing on the motion, Defendant announced that it would be willing to consider Plaintiff's request that a portion of Plaintiff's share of the settlement be paid into an annuity in an effort to minimize Plaintiff's tax burden. Accordingly, the Court agreed to give the Parties 10 days to consider and resolve Plaintiff's

---

[1]The Court notes that the Plaintiff failed to serve Defendant for approximately seven months after filing this lawsuit. *See* Show Cause Order (Dkt. No. 2). Thereafter, the parties continuously informed both the district judge and the undersigned that they were in engaged in settlement discussions, and thus the case remained effectively dormant for months.

2

annuity proposal.  On April 9, 2014, Defendant filed its Status Report with the Court informing the Court that "Plaintiff's proposal to reduce tax consequences is not achievable in a disability income settlement," and thus "Defendant insists that Plaintiff abide by the agreement undeniably reached by the parties."  Defendant's Status Report at p. 2.  Accordingly, Defendant has renewed its Motion to Enforce and the Court will now address that motion.

**II.	The Parties' Settlement Discussions**

As noted above, the Parties have engaged in extensive settlement negotiations in this case. During settlement negotiations on January 7, 2014, Plaintiff's counsel Stephen Nagle sent Rachel Morgan, counsel for Defendant, the following email: "My marching orders are that I can accept an offer of $200G, but I cannot make that offer, and I am to start writing [an MSJ brief] in the morning if we cannot settle." Exh. A(1) to Defendant's Motion.

In response, on January 8, 2014, Ms. Morgan responded in an email as follows: " Just got off the phone with my internal clients who have approved me to offer $200,000 for a full release.  Last and final.  Revoked if I do not receive confirmation of Mr. Fields' acceptance by noon today. Agreement is attached.  Please execute and return it to me. . ." *Id.*  The Confidential Release and Indemnity Agreement attached to the email contained the following payment terms:

> 15.	Defendant shall make the Payment within thirty (30) calendar days of its receipt of the original Agreement executed by Plaintiff and Counsel for Plaintiff, and a current and a signed IRS Form W9 from Counsel for Employee. The Settlement Amount shall be payable as follows:
>
> a. _____ ($ _____) by check payable to Douglas Fields *less applicable tax withholding*. Plaintiff acknowledges that this payment is made in full and complete satisfaction of any claims he may have or claim to have. *An IRS form W2 will be issued with respect to this payment.*

>   b. _____ ($ _____) by check payable to Counsel for Plaintiff, Stephen Nagle.  Counsel for Plaintiff agrees to provide a signed IRS Form W9 to counsel for the Defendant in connection with this payment.  An IRS Form 1099 will be issued with respect to this payment.
>
>   c. Defendant offers no tax advice and makes no representation about the taxability of the proceeds or Plaintiffs obligation to pay taxes on them. *Plaintiff agrees to pay any and all taxes that might be due on the money being paid to him*, if any, and further agrees that Defendant is not and shall not be liable for any portion of any such taxes for which Plaintiff is responsible.

Exh. A(2) to Defendant's Motion (emphasis added).  That same day, Plaintiff's counsel accepted Defendant's offer on behalf of his client, as expressed in the following letter:

> I am writing to confirm that my client, Douglas Fields, has authorized me to accept your offer of $200,000 to settle all his claims against SBC, Inc. or its successor, AT&T, Inc. arising out of his claims for long term disability benefits as reflected in Cause No. 1:11-CV-01022; Douglas Fields v. SBC Communications, Inc.; United States District Court, Western District of Texas, Austin Division.

Exh. B to Defendant's Motion.

In light of the agreement to settle, the next day, on January 9, 2014, the Parties filed the Joint Notice of Anticipated Settlement and Agreement to Stay Pending Deadlines with the Court.  Dkt. No. 26.  During the next couple of weeks, the Parties communicated about the details of the settlement agreement.  For example, in an email dated January 9, 2014, Plaintiff's counsel initially raised two concerns: (1) That the proposed agreement contained a confidentiality provision ("my client does not want to enter into such a confidentiality agreement and that language should be removed"), and (2) that the agreement provided a time frame for payment that was not acceptable to Plaintiff's counsel.  In that communication, Mr. Nagle closed with the following, "Please let me know if you can agree to these changes. Thank you for your cooperation getting this matter resolved. . . ." Exh. C to Defendant's Motion. In response, Ms. Morgan agreed to remove the

4

confidentiality provisions, but asked to keep the 30 day payment provision to allow Defendant time to process the check. She closed by stating, "Feel tree to make those edits directly and return an executed agreement to me and I'll have [the client representative] sign." *Id.* at p. 3.

In the next communication from Mr. Nagle, he identified "one other provision" about the drafting of the agreement that he deleted. He then attached a PDF of his proposed agreement and noted, "I have deleted that one sentence. I attach a PDF of the draft which I will have Mr. Fields sign, with your approval of this last change." *Id.* at p. 2. This Agreement, proposed by Nagle, contained the same tax-related language in Paragraph 15 cited above, including that the check would be made "payable to Douglas Fields less applicable tax withholding," and that "Plaintiff agrees to pay any and all taxes that might be due on the money being paid to him, if any, and further agrees that Defendant is not and shall not be liable for any portion of any such taxes for which Plaintiff is responsible." *Id*. at ¶15. In response, Ms. Morgan responded, "That is fine. . . ." Exh. D to Defendant's Motion. On January 10, 2014, Mr. Nagle sent a revised draft to Ms. Morgan that contained the same payment terms as the previous drafts. Ms. Morgan again replied, "That draft is fine." Exh. E to Defendant's Motion. She then asked Nagle, "Please return a signed copy or original to me as soon as possible and we'll execute it on our end and get the checks. Thanks." Mr. Nagle responded on behalf of Plaintiff, "Thank you. We will." *Id.*

On January 31, 2014, however, Mr. Nagle reported to Ms. Morgan *for the first time* that "Mr. Fields was distressed to learn that his net recovery from the settlement was taxable. He was sure that it was not." Exh. F to Defendant's Motion. However, Mr. Nagle added that "I've explained to him that he gave me the authority to settle and the level of the agreement that we have, and that there is no way to go back. I have recommended that he consult a CPA. He is doing so." *Id.* In response,

Ms. Morgan stated "You are also right that there is 'no way back.' The agreement has already stated, 'less applicable tax withholding,' and he accepted the terms (which you and I negotiated back and forth). There is no doubt we have an enforceable agreement." Exh. G to Defendant's Motion. Ms. Morgan asked again for a signed copy of the Agreement.

On February 12, 2014, Mr. Nagle raised the possibility of a payment to an annuity company that would allow Plaintiff to receive payments over time which would alleviate Plaintiff's tax concerns. Exh. H to Defendant's Motion to Dismiss. After considering Plaintiff's proposal, Defendant rejected that structure, and requests that the Court order Plaintiff to abide by the original agreement.

## III. Analysis

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Bell v. Shexnayder*, 36 F.3d 447, 449 (5th Cir. 1994) (citation and internal quotation marks omitted). Federal law governs the validity of a settlement agreement when "the substantive rights and liabilities of the parties derive from federal law." *Mid–S. Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Federal law considers a settlement agreement to be a contract. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance. *Lopez v. Kempthorne*, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010).

The settlement negotiations in this case (described in detail above) clearly show that the parties entered into a binding agreement to settle the case. The email communications from January 7-10, 2014, show that Mr. Nagle on behalf of the Plaintiff and Ms. Morgan on behalf of the

Defendant agreed to settle the case for $200,000, and specifically addressed the taxability of that sum.  "A binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chen v. Highland Capital Mgmt., L.P.*, 2012 WL 5935602, at *2 (N.D. Tex. Nov.27, 2012).  "A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Finance Corp. of Texas*, 2010 WL 1904561, at * 2 (N.D. Tex. May 12, 2010).

This case is analogous to *Daftary v. Metropolitan Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan.12, 1998) (per curiam), in which the Fifth Circuit affirmed the district court's decision to enforce a settlement agreement where when one party had refused to sign the final settlement document.  In that case, the parties, through their counsel, agreed to settle the case and reduced the agreement to writing after negotiation between counsel and consultation with their respective clients. *Id.*  However, when the final settlement agreement was presented to the plaintiff, he refused to sign the agreement. *Id.*  The Court found that terms stated in the final draft of the settlement agreement were the terms upon which plaintiff had authorized his counsel to settle the case. *Id.*  Accordingly, it was proper for the district court to grant the motion to enforce the settlement agreement. *Id.*

The fact Plaintiff did not personally sign the Settlement Agreement does not mean he is not bound by it.  Under Fifth Circuit precedent, "an attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry." *Quesada v. Napolitano*, 701 F.3d

1080, 1083 (5th Cir. 2012) (quoting *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984)).  Mr. Nagle, as he himself expressed in his emails to opposing counsel, clearly was authorized by Plaintiff to settle the case.  *See  McCardell v. Verizon Wireless Texas, LLC*, 2011 WL 841519, at *3 (S.D. Tex. March 4, 2011) ("Where, as here, the plaintiff is represented throughout the settlement negotiations by her attorney of choice, the settlement agreement is presumptively informed, willing, and valid").  Thus, Mr. Nagle's acceptance of the $200,000 settlement offer as displayed in his January 8, 2014 email, created a binding, enforceable contract.  *See Quesada,* 701 F.3d at 1084, n. 10 (attorney's acceptance of settlement offer on behalf of his client created an enforceable agreement).  The record contains no evidence that Plaintiff objected to his counsel's settlement offer at any point during negotiations or even after the offer was accepted.  Plaintiff only raised his concern about the tax consequences of the payment plan approximately three weeks after the agreement was created.  Such after-the-fact concerns cannot undermine the validity of a previously-made agreement.  *See id.* at 1083-84 (plaintiff's emails sent to his attorney several days after his attorney had accepted the settlement offer had no effect on the validity of the settlement agreement); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) ("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement."); *McCardell,* 2011 WL 841519, at *3 (although plaintiff refused to sign the settlement agreement, her lawyer's communication of her agreement to defense counsel bound the plaintiff to the agreement).

      Finally, the Court finds that Plaintiff's failure to understand the tax consequences of the payment structure contained in the Settlement Agreement does not impact the validity of the Settlement Agreement.  *See Farmer v. Banco Poular of North America*, – Fed. App'x – , 2014 WL

661476, at * 6 (10th Cir. Feb. 21, 2014) (holding that the parties' attempt to alter the payment structure did not prevent the district court from enforcing the settlement agreement even though plaintiff refused to sign the agreement); *Frank v. Nostalgia Network, Inc.*, 1997 WL 44845, at *2 (E.D. Pa.1997) (holding that plaintiff was bound to the terms of the settlement agreement despite the fact that she raised concerns about the tax consequences of her payment after the agreement was reached since tax consequences was not an essential term of the agreement). At no point during the settlement negotiations did Mr. Nagle ever bring up Plaintiff's concern with regard to the tax consequences of the payment terms. Every draft of the Settlement Agreement proposed by either counsel contained the same language with regard to Plaintiff's tax obligations. Plaintiff did not raise his concerns regarding the tax consequences until several weeks after the agreement was reached. Plaintiff is bound to the terms of the Settlement Agreement that he originally agreed to. "Having entered a legally binding agreement with the defendant, [h]e may not subsequently change [his] mind and withdraw [his] consent." *Frank*, 1997 WL 44845, at * 2.

Based upon the foregoing, the Court **HEREBY GRANTS** Defendant's Motion to Enforce Settlement Agreement (Dkt. # 29) The Court will issue an Order to enforce the Settlement Agreement proposed by Plaintiff's Counsel on January 10, 2014 at 11:26 a.m., and attached as Exhibit D to Defendant's Motion to Enforce Settlement Agreement, in a separate Order issued this same day.

SIGNED this 18th day of June, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE